# Illinois Official Reports

## Appellate Court

---

## *People v. Petty*, 2020 IL App (3d) 180011

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT A. PETTY, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0011 |
| Rehearing denied<br>Opinion filed | March 12, 2020<br>March 12, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Stark County, No. 16-CF-5; the Hon. Thomas A. Keith, Judge, presiding. |
| Judgment | Conviction vacated. |
| Counsel on Appeal | Jack A. Schwartz, of Jack A. Schwartz, P.C., of Rock Island, for appellant.<br><br>James D. Owens, State's Attorney, of Toulon (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel            JUSTICE McDADE delivered the judgment of the court, with opinion.
                 Presiding Justice Lytton concurred in the judgment and opinion.
                 Justice Schmidt dissented, with opinion.


**OPINION**

¶ 1    The State charged Scott A. Petty with, *inter alia*, one count of aggravated driving a vehicle while under the influence of methamphetamine, in violation of sections 11-501(a)(6) and 11-501(d)(1)(F) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2014)). Following a stipulated bench trial, the trial court found Petty guilty of the offense charged and sentenced him to nine years in prison. Petty now appeals, arguing (1) the trial court erred in failing to suppress the State's evidence, (2) the State's evidence was insufficient to sustain his conviction, and (3) section 11-501(a) is unconstitutional. We entered an order reversing and vacating Petty's conviction. The State filed a petition for rehearing. We modify our decision on denial of the State's petition and file it as a published opinion.


¶ 2                              FACTS

¶ 3    On November 9, 2015, Stark County sheriff's deputy Dustin Schaill responded to a reported car crash on Illinois Route 40 at approximately 630 feet north of 800 N. Bradford, Penn Township. Schaill arrived on site at about 5:13 p.m. He observed a Bradford Rescue unit removing Petty from his van in the southbound lane facing east. The front of Petty's van was heavily damaged and seemed to have collided with another car. Petty did not appear to be coherent. Officer Todd Marquez of the Bradford Police Department also responded to the crash and assisted with traffic control.

¶ 4    The other car was in the northbound ditch and had significant damage from what appeared to be a frontal collision. The Bradford Rescue unit removed the driver, Gina Masters, from the crash site and air-lifted her to OSF Saint Francis Medical Center (Saint Francis) in Peoria. Petty was transported via ambulance to the same location. While Schaill was in transit, he learned that Masters had died en route to Saint Francis. At the crash site, Officer Marquez observed drug paraphernalia and a substance he believed to be cannabis inside Petty's van. Marquez informed Schaill of his observations and collected the items.

¶ 5    Petty arrived at Saint Francis at about 6:43 p.m. At about 6:50 p.m., Dr. Jennifer E. Schmidt ordered that a urine sample be drawn from Petty. After Deputy Schaill arrived at Saint Francis, he placed Petty under arrest for driving under the influence and read him the motorist's implied consent warning at about 9:02 p.m., and at about 9:25 p.m. he independently signed a separate request for a urine draw. At the time, Petty was semiconscious, severely injured, and incoherent. A single urine sample was collected from Petty at 4 a.m.

¶ 6    The State filed four criminal charges against Petty on March 10, 2016. Count I alleged a Class 2 felony offense in violation of sections 11-501(a)(6), 11-501(d)(1)(F), and 11-501(d)(2)(G) of the Vehicle Code (625 ILCS 5/11-501(a)(6), (d)(1)(F), (d)(2)(G) (West 2014)). It stated that Petty, "while under the influence of methamphetamine as listed in the Methamphetamine Control and Community Protection Act, drove [his van], causing [it] to strike the vehicle driven by Gina M. Masters, thereby causing the death of Gina M. Masters,

and [Petty's] driving in violation of Section 11-501(a)(6) was a proximate cause of the death of Gina M. Masters."

¶ 7       Petty filed two separate motions to suppress the urine draw and test results. In the first motion, he alleged that the urine draw was performed without first obtaining his consent. Specifically, he argued that the urine draw was not part of his medical treatment and was conducted without probable cause. The trial court denied the motion, ruling that the Illinois implied consent statute (625 ILCS 5/11-501.1 (West 2014)) creates an exception to the warrant requirement of the fourth amendment.

¶ 8       In his second motion, Petty argued that the trial court should suppress all the findings of the urine analysis obtained from his sample. He contended that, although the tests were performed for medical use only and not for legal purposes, the medical facility turned over the results without his consent and without a warrant. The trial court denied Petty's second motion on September 13, 2017, ruling that the hospital records would come in under the business records exception to the hearsay rule.

¶ 9       On October 6, 2017, Petty executed a "waiver of jury and a plea of not guilty" form. A week later, the parties tendered the following facts in stipulation: that Schaill and Marquez would testify to their observations at the crash site and on the date of the accident; that Medical Examiner J. Scott Denton would testify that he performed an examination of Masters on November 11, 2015, and determined that she died "from multiple blunt injuries due to a motor vehicle collision"; that Dr. Schmidt would testify that she ordered an analysis of Petty's urine from which amphetamine and benzodiazepines were detected; and that forensic scientist Joni C. Little would testify that she analyzed 0.2 grams of the white powder found in Petty's car and detected the presence of methamphetamine. Petty and counsel for the parties signed the written stipulation form.

¶ 10      In the stipulations, Petty reserved the right to raise "evidentiary objections to the admissibility of [the] test results as previously argued in [his] pretrial motions." He stated that he would present testimony from Ronald Henson regarding "the weight to be given to the test results."

¶ 11      The parties then proceeded to a stipulated bench trial. At the bench trial, Petty stipulated to the facts previously tendered. Counsel for the defense explained that Petty was stipulating only that the evidence would be as tendered. Ronald Henson never testified, and no additional testimony was presented.

¶ 12      The trial court ruled as followed:
          "I find that there is a factual basis to support a finding of beyond a reasonable doubt that the defendant is guilty of Count One as charged for the aggravated driving of a vehicle under the influence. His stipulation is accepted, and it is ordered and directed that the defendant is found guilty of Count One of the indictment."

¶ 13      The court subsequently sentenced Petty to nine years in prison. On November 14, 2017, Petty timely filed a motion for a new trial arguing, *inter alia*, that the evidence was insufficient to sustain his conviction. The trial court denied his motion.

¶ 14      This appeal now follows.

¶ 15                                    ANALYSIS

¶ 16          I. Sufficiency of the Evidence of Methamphetamine Consumption

¶ 17          On appeal, Petty contends that the State failed to show that he consumed methamphetamine as defined in the Methamphetamine Control and Community Protection Act. The parties only stipulated to the presence of two substances in his urine: amphetamine and benzodiazepine. Petty argues that the evidence is insufficient to sustain the charge because the State presented no evidence that those compounds resulted from his consumption of methamphetamine. We agree with Petty and vacate his conviction.

¶ 18          In reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Holliday*, 2019 IL App (3d) 160315, ¶ 10. A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *Id.* In reviewing the evidence presented, this court should "allow all reasonable inferences from that evidence to be drawn in favor of the [State]." *People v. Martin*, 2011 IL 109102, ¶ 15. However, this court "should not make random speculation in favor of the [State]." *People v. Dye*, 2015 IL App (4th) 130799, ¶ 12. Where review of the evidence turns on a "statutory interpretation, our review is *de novo*." *Martin*, 2011 IL 109102, ¶ 20.

¶ 19          Petty was charged with the offense of aggravated driving of a vehicle while under the influence of methamphetamine, in violation of sections 11-501(a)(6) and 11-501(d)(1)(F) of the Vehicle Code. 625 ILCS 5/11-501(a)(6), (d)(1)(F) (West 2014). Subsection (a)(6) provides:

          "A person shall not drive or be in actual physical control of any vehicle within this State while *** there is any amount of a drug, substance, or compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of *** methamphetamine as listed in the Methamphetamine Control and Community Protection Act." 625 ILCS 5/11-501(a)(6) (West 2014).

¶ 20          The State first contends that "methamphetamine is an amphetamine, hence the name 'methamphetamine.' " The State thus argues that a reasonable inference could be drawn that the amphetamine and benzodiazepine found in Petty's blood were salts, optical isomers, or salts of an optical isomer or analog thereof, from "which the methamphetamine had been metabolized." We disagree.

¶ 21          In reviewing the sufficiency of the evidence, this court "should draw only reasonable inferences in favor of the [State]; we should not make random speculations in favor of the prosecution." (Emphasis omitted.) *Dye*, 2015 IL App (4th) 130799, ¶ 12. Whether the metabolization of methamphetamine into amphetamine, benzodiazepine, or both has occurred entails a level of chemical knowledge not ordinarily possessed by the average person. Thus, a determination by the trier of fact that the presence of either chemical compound results from the consumption of methamphetamine requires competent testimony from a person having such specialized knowledge. To sustain Petty's conviction absent such testimony would be tantamount to making a random speculation regarding the metabolization of methamphetamine in favor of the State.

¶ 22          The State's contention also fails because the applicable statute specifically precludes it. The Methamphetamine Control and Community Protection Act defines methamphetamine as "the chemical methamphetamine *** or any salt, optical isomer, salt of optical isomer, or

analog thereof, *with the exception of \*\*\* any other scheduled substance with a separate listing* under the Illinois Controlled Substances Act." (Emphasis added.) 720 ILCS 646/10 (West 2014). Amphetamine is listed as a controlled substance under section 206(d)(1) of the Illinois Controlled Substances Act, whereas methamphetamine and "its salts, isomers, and salts of its isomers" are listed under section 206(d)(2). See 720 ILCS 570/206(d)(1), (2) (West 2014). So even if one could appropriately infer that amphetamine is a "salt" or "isomer" of methamphetamine simply because of its name, the plain language of both the Illinois Controlled Substances Act and the Methamphetamine Control and Community Protection Act excludes amphetamine as a predicate for a section 11-501(a)(6) violation based on consuming methamphetamine. 625 ILCS 5/11-501(a)(6) (West 2014).

¶ 23    Finally, the State contends that Petty failed to argue in the trial court that the presence of amphetamine and benzodiazepine is insufficient to establish consumption of methamphetamine and has, therefore, "forfeited the argument on appeal." The State also contends that this court can sustain the decision of the trial court on any grounds supported in the record, regardless of whether the trial court relied on the grounds and regardless of whether the trial court's reasoning was correct. The State seems to conclude from these contentions that the presence of methamphetamine in a white powder collected from Petty's van supports an inference that he unlawfully consumed methamphetamine. We again disagree.

¶ 24    First, this court has previously found that a "challenge to the sufficiency of the evidence is not subject to the waiver rule and can be raised by a defendant for the first time on direct appeal, even if not properly preserved." *People v. Muhammad*, 398 Ill. App. 3d 1013, 1018 (2010). Thus, Petty's challenge to the sufficiency of the evidence on appeal is not limited to his theory before the trial court. And second, as previously noted, our duty is to draw reasonable inferences from the evidence, not to "make random speculations in favor of the [State]." *Dye*, 2015 IL App (4th) 130799, ¶ 12. There is nothing in the stipulated facts showing that Petty consumed methamphetamine, regardless of whether the evidence showed that Officer Marquez collected methamphetamine from his car.

¶ 25               II. Sufficiency of the Evidence of a Lesser-Included Offense

¶ 26    In its petition for rehearing, the State argues for the first time that we should "consider the issue of whether defendant was proven guilty beyond a reasonable doubt of the included offense of aggravated driving under the influence (DUI) of amphetamine." For the reasons that follow, we cannot grant that request.

¶ 27    Section 2-9(a) of the Criminal Code defines a lesser-included offense as one that " '[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged.' " *People v. Kennebrew*, 2013 IL 113998, ¶ 28 (quoting 720 ILCS 5/2-9 (West 2008)). "[A] defendant may be convicted of an uncharged offense if it is a lesser-included offense of a crime expressly charged in the charging instrument and the evidence adduced at trial rationally supports a conviction on the lesser-included offense and an acquittal on the greater offense." *People v. Clark*, 2016 IL 118845, ¶ 30 (citing *Kennebrew*, 2013 IL 113998, ¶ 27). In reducing a conviction on appeal, we apply the " 'charging instrument approach' " to determine "whether an uncharged offense is a lesser-included offense of a charged offense." *Id.* ¶ 31. Under Illinois Supreme Court Rule 615(b)(3), imposition of an uncharged lesser-included offense is proper

if "the defendant had sufficient notice of the uncharged offense." *Kennebrew*, 2013 IL 113998, ¶ 53.

¶ 28   In *Clark*, our supreme court concluded that armed robbery " 'with a dangerous weapon, other than a firearm' " was not a lesser-included offense of armed robbery with a firearm. (Emphasis omitted.) *Clark*, 2016 IL 118845, ¶ 38. The court stated that it

> "would have to stretch plain meaning and common understanding beyond a semblance of reason to conclude that a charge that a defendant committed an offense while 'armed with a firearm' puts that defendant on notice, explicitly or inferentially, that he may be prosecuted for, and convicted of, an uncharged offense committed 'with a dangerous weapon, *other than* a firearm.' " (Emphasis in original.) *Id.*

We find our supreme court's holding and reasoning in *Clark* applicable to the State's request in its petition for rehearing.

¶ 29   The State, exercising its discretion, charged Petty with a DUI in violation of section 11-501(a)(6) of the Vehicle Code (625 ILCS 5/11-501(a)(6) (West 2014)), alleging that he was under the influence of methamphetamine as defined in the Methamphetamine Control and Community Protection Act (720 ILCS 646/10 (West 2014)). That act specifically excludes any other scheduled substance with a separate listing under the Illinois Controlled Substances Act. As noted, amphetamine is listed as a controlled substance under section 206(d)(1) of the Controlled Substances Act, whereas methamphetamine and "its salts, isomers, and salts of its isomers" are separately listed under section 206(d)(2) of that act. 720 ILCS 570/206(d)(1), (2) (West 2014). In alleging the consumption of methamphetamine as defined in the Act, the charging instrument excluded all other convictions for any other substances listed under the Illinois Controlled Substances Act. It also placed Petty on notice that the proof sufficient for his conviction was limited to evidence of consumption of methamphetamine. Petty did not have "sufficient notice of the uncharged offense" of driving while under the influence of amphetamine. *Kennebrew*, 2013 IL 113998, ¶ 53. Therefore, the State's request in its petition for rehearing goes beyond our authority under Rule 615(b)(3).

¶ 30                                      CONCLUSION

¶ 31   The judgment of the circuit court of Stark County is vacated, and Scott A. Petty's conviction for aggravated driving while under the influence of methamphetamine is vacated, and the State's petition for rehearing is denied.

¶ 32   As a result of our ruling, we need not address Petty's arguments regarding (1) the constitutionality of section 11-501(a) and (2) the suppression of the evidence.

¶ 33   Conviction vacated.

¶ 34   JUSTICE SCHMIDT, dissenting:

¶ 35   I respectfully dissent. In my opinion, the evidence, when viewed in the light most favorable to the State, supports the trial court's finding that defendant violated subsection 11-501(a)(6) of the Vehicle Code.

¶ 36   The majority acknowledges that, when reviewing the sufficiency of the evidence, we must ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Holliday*, 2019 IL App (3d) 160315, ¶ 10. The majority continues

that the reviewing court will not reverse unless the evidence is so improbable as to create a reasonable doubt of defendant's guilt. *Id.* But then the majority does just that.

¶ 37   The trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances but rather be satisfied that all evidence, taken together, establishes defendant's guilt. *People v. Sutherland*, 223 Ill. 2d 187, 243 (2006). Defendant struck a car and killed the driver. When the paramedics removed defendant from his vehicle, he was incoherent. Officers found drug paraphernalia and a white powdery substance in his car. A forensic scientist identified this substance as methamphetamine. Defendant's urinalysis returned a positive result for benzodiazepines and amphetamine. The subsection under which the State charged defendant criminalizes operating a motor vehicle when a defendant has any amount of a "drug, substance, or compound" in his "breath, blood, or urine resulting from the unlawful use or consumption of *** a controlled substance listed in the Illinois Controlled Substances Act, *** or methamphetamine." 625 ILCS 5/11-501(a)(6) (West 2014). The State put forth a common-sense argument: methamphetamine is an amphetamine. See *Methamphetamine*, The National Institute on Drug Abuse (revised May 2019), https://www. drugabuse.gov/publications/drugfacts/methamphetamine [https://perma.cc/526E-KZFL]. The consumption of methamphetamine metabolizes down into amphetamine. See Robert West *et al.*, *Differentiating Medicinal From Illicit Use in Positive Methamphetamine Results in a Pain Population*, 37 J. of Analytical Toxicology 83, 84 (2013) ("[Methamphetamine] is metabolized by hepatic microsomal enzymes to amphetamine."). Defendant had methamphetamine in his vehicle and paraphernalia to consume it. He tested positive for amphetamines. Therefore, one can make a reasonable inference that defendant was under the influence of methamphetamine at the time of the collision.

¶ 38   The majority also contends the State failed to satisfy the statutory requirements to sustain a conviction under section 11-501(a)(6) of the Vehicle Code. Section 501(a)(6) describes not only consumption of methamphetamine but also any drug listed in the Illinois Controlled Substances Act. Referring to the Illinois Controlled Substances Act, one can see that both amphetamine and methamphetamine are included. 720 ILCS 570/206(d)(1), (2) (West 2014). Therefore, the State proved defendant was in violation of the charging statute.