**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210521-U

Order filed September 19, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0521 Circuit No. 19-TR-4069 |
| JOSHUA R. KNIGHT, | ) ) ) | Honorable Chrystel L Gavlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDade delivered the judgment of the court.
Justices Daugherity and Hauptman concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The State's evidence was sufficient to sustain Defendant's conviction and
                sentence for driving an overweight vehicle on an elevated structure in violation of
                Section 5/15-111(f) of the Illinois Vehicle Code (625 ILCS 5/15-111(f) (West
                2018).

¶ 2     Defendant Joshua R. Knight was cited for driving his truck onto a weight limited bridge.

He elected to go to trial and challenged the citation, arguing that there was no advance signage

alerting motorists to the restriction. The trial court rejected his affirmative defense, found him

guilty, and sentenced him to pay statutory fines of $6,410. He now challenges his conviction and sentence. For the reasons that follow, we affirm his conviction and sentence.

¶ 3                                                        FACTS

¶ 4          On August 12, 2019, Will County Sheriff's Deputy Kenneth Rafter issued Joshua Knight a traffic citation, charging him with driving an overweight vehicle on an elevated structure in violation of section 15-111(f) (625 ILCS 5/15-111(f) (West 2018)). Knight pled not guilty and proceeded to a bench trial. His two-day trial began on November 17, 2020. The first day was not recorded because of technical difficulties. The trial court issued a bystander's report relating the first day's testimony from Deputy Rafter and a defense witness designated only as Investigator Bergeson. On appeal, both parties have stipulated to the report's accuracy. There is a transcript in the record of the trial's second day.

¶ 5          Deputy Rafter testified that on August 12, 2019, he was on 138th Street and Smith Road when he noticed an Amazon box truck with an attached sleeper cab and 53-foot trailer traveling in excess of the 35-mph posted speed limit. The truck was traveling northbound on Smith Road in Lockport Township, Will County, Illinois. Smith Road is not a designated truck route and has a 10-ton weight limit, with signs posted to alert would-be users. There is a bridge (or elevated structure) on Smith Road with a posted six tons weight limit.

¶ 6          Because he could hear rattling sounds, Rafter concluded that the truck was empty of cargo. He also surmised, based on his experience, that the truck was 70 feet in length, exceeding the restriction on Smith Road by 5 feet. Rafter observed the truck travel onto and across the elevated structure. He testified that there were signs on both sides of the bridge that transects Smith Road as well as along Smith Road. He believed that the signs on the road and bridge were visible and the information legible to truck drivers coming from Archer Avenue (also known as

2

171st Street) from the direction that the truck was traveling and that there were no obstructions to the signs. Rafter testified that there was a posted six-ton sign one mile ahead of the bridge. After observing the driver commit the violations, he activated his sirens and lights and pulled the truck over.

¶ 7        Rafter spoke with the driver whom he identified as Knight. Knight told him that he was trying to get back to Joliet after making a right turn onto Smith Road from Archer Avenue. He denied seeing the weight limit signs on Smith Road. After attempting, unsuccessfully, to weigh the truck with a portable device, Rafter instructed Knight to follow him to Elwood where the truck could be weighed on a digital platform. The truck weighed 32,480 pounds or roughly 16.24 tons.

¶ 8        Investigator Bergeson testified that he was familiar with the area of Smith Road and 135th Street. He initially stated that the weight limit sign could only be seen once a truck had driven onto Smith Road. However, he did acknowledge that the sign on Smith Road might be visible from 10 to 12 feet away and noted that the stop occurred during the day. He explained that there is a commercial building on the corner of Smith and Archer Avenue (or Route 171) and that, depending on its size, a truck might be able to turn around in its lot. Investigator Bergeson "did not measure the lot."

¶ 9        Knight testified in his own defense. He described his truck as a 53-foot multi-axle trailer with a sleeper, five-axle combination. He was returning his empty trailer to Amazon when he was pulled over on Smith Road. Knight explained that he had been traveling on I-355 south toward I-80 east when construction and an accident on the road diverted his route. Because of "mass traffic," he missed a lane to get back onto I-355 and had to proceed on Archer Avenue. He

3

continued on Archer Avenue because he was aware of "multiple low bridges in the Joliet area" and "was afraid of that being an issue" for his trailer.

¶ 10    Knight intended to head back north to 135th Street and get back on I-355 and he turned right onto Smith Road for that purpose. He had never been on that road before but had driven in the nearby area. Knight stated that he could not see the weight limit sign from Archer Road before turning onto Smith Road. When he did see the signs, he "quickly evaluated" and instead of stopping like his training told him to do, he continued driving on Smith Road. Knight decided that was his best option because the ditches in a rural area would make it too difficult to stop and he only had "one mile of Smith Road to exit this rural street." Knight had crossed the bridge and was initiating a right turn when he noticed Deputy Rafter's lights and heard the siren behind him. After the stop, he agreed to follow Rafter to the weighing station. He explained that they had to travel "through construction on I-355" and on I-80, losing the hour, he "initially" tried to avoid.

¶ 11    On cross-examination, Knight admitted that he stopped on Smith Road when he saw the sign indicating the weight limit and pulled over for a moment. But he decided to proceed down Smith Road because people were passing him despite his emergency light. He did not feel comfortable backing out of Smith Road because he did not have a "spotter." He also stated that he did not see the weight limit signs before crossing the elevated structure. He admitted that he was well above the weight limit for the bridge but decided to proceed across it because of a "traffic jam that *** was forming."

¶ 12    In closing arguments, the State highlighted that Knight had admitted that he saw the signs, stopped, and then proceeded to travel on Smith Road. It argued that the signage was visible from Archer Road when accessing Smith Road. Knight argued the weight restriction sign was not visible until after one makes the turn onto Smith Road.

¶ 13    The trial court agreed that the signs were not visible until after turning onto Smith Road. It, however, concluded that Knight had "other options" than continuing onto the bridge. The court explained:

> "So, he didn't get all the way down the road and then hit the bridge sign, realize oh, my goodness, I'm overweight on the bridge. This was right there when he turned. And he didn't exercise I think all the options he could have, and the biggest one would have been to at least call the local police department and say I can't go any further, I need help, and to be able to safely back up with officers directing traffic."

¶ 14    The trial court found the State had met its burden, found Knight guilty of the charged violation, and entered an order of conviction. The court imposed a statutory fine of $6,410.

¶ 15                                ANALYSIS

¶ 16    Section 15-111(f) of the Illinois Vehicle Code states: "No person shall operate a vehicle or combination of vehicles over any structure with a gross weight that is greater than the posted maximum weight." 625 ILCS 5/15-111(f) (West 2018). Knight was cited under this section for proceeding on an "elevated structure" with an overweight vehicle. The undisputed evidence at trial showed that the bridge was an elevated structure with a restricted weight of six tons. The undisputed evidence also showed that Knight's truck weighed 32,480 pounds, far beyond the posted restricted weight of the bridge.

¶ 17    On appeal, Knight does not dispute this evidence. Instead, he argues that he presented sufficient evidence at trial to establish an affirmative defense of improper signage negating his

guilt.[1] In light of his trial evidence, he contends, the burden shifted onto the State to overcome his defense with sufficient evidence of its own. Essentially, Knight challenges the sufficiency of the State's evidence to sustain his conviction.

¶ 18     In reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Petty*, 2020 IL App (3d) 180011, ¶ 18. A conviction will only be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *Id.* In reviewing the evidence presented, this court should allow all reasonable inferences from that evidence to be drawn in favor of the State. *Id.*

¶ 19     At trial, Knight argued that by adopting the Uniform Manual on Traffic Control Devices, Illinois requires that the "location and legibility of the traffic control device should be such that a road user has adequate time to make the proper response in both day and night conditions."[2] He asserted that the weight limit signs for Smith Road were not visible until he had turned onto the road. He also contends that once on Smith Road, his options were constricted by the narrowness of the "rural road" and the size of his truck. He stated that he had to proceed down Smith Road until he could exit onto a truck route. The trial court noted, and the State now argues, that Knight was advancing a necessity defense inapplicable to his case. Because Knight is advancing the

---

[1] Section 11-303(a) of the Illinois Vehicle Code requires the Department of Transportation to "place and maintain such traffic-control devices, conforming to its manual and specifications on all highways under its jurisdiction as it shall deem necessary to indicate and to carry out the provisions of this Chapter or to regulate, warn or guide traffic." 625 ILCS 5/11-303(a) (West 2019).

[2] Knight seems to rely on section 11-301(a), which requires the Department to adopt traffic control devices that "conform [with] the national manual on Uniform Traffic Control Devices for Streets and Highways." 625 ILCS 5/11-301(a) (West 2019).

6

Smith Road signage as his defense against the only actual charged conduct of unlawful use of the bridge, we agree with the trial court's characterization of his contentions.

¶ 20       Under Illinois law, necessity may create an affirmative defense against certain criminal offenses. *People v. Jackson*, 2013 IL 113986, ¶ 23 (listing necessity as example of affirmative defense). However, the necessity required to preclude a conviction has three basic elements: (i) the defendant must be "without blame in occasioning or developing the situation" leading to criminal conduct, (ii) the defendant must reasonably believe that his or her conduct was necessary to avoid a public or private injury, and (iii) the public or private injury must be greater than the injury caused by the defendant's own conduct. 720 ILCS 5/7-13 (West 2018). While the location and visibility of the signs regarding Smith Road's weight restriction might have supported a finding of the first element, it does not support such a finding relevant to the bridge restriction—the offense for which Knight was actually cited and convicted.

¶ 21       However, Knight maintains that he is not advancing a necessity defense but merely contends that the signs posted were improperly placed to provide adequate notice. He does not assert that the six-ton restriction sign was not visible, but that a "No Truck" sign, placed on Archer Avenue before the intersection with Smith Road, would have accurately and adequately advised of the restriction. We disagree.

¶ 22       As previously stated, Knight was cited not for being on Smith Road but rather for proceeding across an "elevated structure" under paragraph (f) of section 15-111. Deputy Rafter testified that there was a properly posted six-ton sign one mile ahead of the bridge. By his own admission, Knight could have elected not to proceed onto and across the bridge. When he noticed the signs on Smith Road, Knight "quickly evaluated" the situation, but continued down Smith Road because he had "one mile *** to exit this rural street." Although he testified that he

7

did not see the six-ton restriction signs for the bridge, the sum of all testimony at trial supports a reasonable inference that he had sufficient notice to act compliantly had he been attentive. Furthermore, paragraph (f) does not exclude all trucks from elevated structures; only trucks weighing more than the threshold weight are excluded from travelling onto and across the Smith Road bridge.

¶ 23                              CONCLUSION

¶ 24          The judgment of the circuit court of Will County is affirmed.

¶ 25          Affirmed.