**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200145-U

Order filed April 28, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-20-0145 |
| v. | ) | Circuit No. 18-DT-843 |
| | ) | |
| NICOLE J. ALKSNIS-DYER, | ) ) | Honorable Victoria R. Breslan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Davenport concurred in the judgment.

**ORDER**

¶ 1      *Held*:    The evidence was sufficient to convict defendant of DUI. Defendant's statutory speedy trial rights were not violated.

¶ 2      Defendant, Nicole J. Alksnis-Dyer, appeals her conviction for driving while under the influence (DUI). Defendant argues that the State failed to prove her guilty of DUI where it did not introduce evidence as to the accuracy of the hospital laboratory test. Additionally, defendant argues that her statutory speedy trial rights were violated where the State filed a superseding information more than a year after the initial charge. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        On August 3, 2018, the Illinois State Police issued defendant a uniform traffic citation for DUI (625 ILCS 5/11-501(a)(4) (West 2018)). Defendant filed a written speedy trial demand on September 26, 2019.

¶ 5        On November 5, 2019, the State filed a superseding information alleging two counts of misdemeanor DUI (*id.* § 11-501(a)(4), (a)(6)). In relevant part, count I alleged that "defendant drove *** while there was any amount of drug *** in her *** urine resulting from the unlawful use or consumption of a controlled substance listed in the Illinois Controlled Substances Act [(Act) (720 ILCS 570/100 *et seq.* (West 2018))]." The State dismissed count II prior to trial. Defendant moved to dismiss count I, arguing a speedy trial violation had occurred. The court denied defendant's motion, finding that charges brought by uniform traffic citations are not subject to the compulsory joinder statute.

¶ 6        The case proceeded to a bench trial on January 10, 2020. Jack Jans, a Bolingbrook paramedic, testified that he was dispatched to the scene of a single vehicle crash on Interstate 55 at approximately 3:31 a.m. on August 3, 2018. Upon arrival, Jans observed a damaged red Chrysler and made contact with defendant, who admitted to being the driver. Jans indicated that he did not observe defendant slurring her speech, stumbling, or having difficulty walking. Jans did not observe defendant drink or ingest anything. Defendant complained of neck pain, and Jans observed dried blood around her mouth. He indicated that she was confused and had difficulty answering questions but was otherwise alert. Jans transported defendant to the hospital, arriving at approximately 4:19 a.m.

¶ 7        Illinois State Trooper Kyle Klingen testified that he responded to the scene and observed the red Chrysler in the ditch. The vehicle appeared to have struck a signpost and weighted crash

2

barrels, and rolled over. Defendant was speaking with paramedics when Klingen arrived. She appeared lucid and did not exhibit any obvious balance issues. Klingen identified defendant in court as the driver and owner of the Chrysler. Defendant told Klingen that she had been driving and had been run off the road by another vehicle. Portions of the squad car video were admitted reflecting these statements.

¶ 8        At the hospital, Klingen attempted to wake defendant several times before he was able to speak with her. Klingen did not know whether defendant had been given sedatives during the course of her treatment. He read defendant the warning to motorist at approximately 6:09 a.m. Defendant refused to provide blood and urine samples to police. No Illinois State police testing was completed, and Klingen did not request medical personnel to collect defendant's blood and urine for testing.

¶ 9        Oscar Torres, a registered nurse, testified that he helped provide treatment for defendant at the hospital on August 3, 2018. He testified that an on-duty physician ordered a urine drug test as part of defendant's course of treatment. At approximately 5:15 a.m., a female nurse accompanied defendant into the bathroom and collected the sample in a clean catch specimen cup. After collection, specimen labels with the patient's information are attached to the cups and they are transported to the on-site hospital laboratory via a tube system. Torres testified that the hospital only uses its on-site laboratory for urine drug screens. Upon completion, defendant's test results were uploaded from the laboratory into the computer system where medical personnel could access them. Torres recalled that defendant's urine tested positive for the presence of cocaine.

¶ 10        The State showed Torres a report which included the results of defendant's urine drug screen. Torres testified that the report was consistent with the type of report that is generated by the hospital laboratory. He indicated that the tests were routinely ordered by emergency room

physicians when providing care to motorists involved in crashes, and the results were used and relied upon by physicians and nurses "[a]ll the time." Torres testified that the results were vital to medical personnel to avoid adverse drug interactions and to determine the correct course of treatment for patients. Defendant's test results recorded a positive result for the presence of cocaine and were admitted into evidence as a business record. The report indicated that the result was verified by repeat analysis.

¶ 11        On cross-examination, defense counsel showed Torres a subsequent page from defendant's laboratory report which included a urine chemistry result and contained a series of footnotes. Defense counsel had Torres read one footnote from the report, which stated: "drug detection limit 300 nanograms per milliliter. Results of this screen assay have not been confirmed. Unconfirmed screening results should not be used for non medical purposes."[1] Torres indicated that the laboratory performed a urine drug screen on defendant, but he was not aware of whether the test was preliminary or confirmatory as he was not a laboratory employee, and his function in the process was to collect the specimens and send them to the laboratory for testing.

¶ 12        Defendant moved for a directed finding, arguing that the State did not present sufficient evidence that defendant had cocaine in her system on August 3, 2018. The motion was denied. Defendant presented no evidence. The court found defendant guilty of DUI. Defendant filed a motion for a new trial which argued that the drug testing was insufficient to prove defendant had cocaine in her system. The motion was subsequently denied. Defendant was sentenced to 18 months' conditional discharge, 300 hours of community service, and 5 days' imprisonment, "day for day with one day credit served, mittimus stayed with motion to vacate." Defendant appeals.

_____

[1]This page is not contained within the record on appeal.

4

¶ 13                                    II. ANALYSIS

¶ 14        On appeal, defendant argues that the State failed to prove her guilty of DUI where it did

not prove the accuracy of the hospital laboratory test which recorded a positive result for cocaine.

Further, defendant argues that her statutory speedy trial rights were violated when the State filed

a superseding information more than a year after the initial charge.

¶ 15                             A. Sufficiency of the Evidence

¶ 16        When reviewing the sufficiency of the evidence, we ask whether, viewed in the light most

favorable to the State, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt. *People v. Howell*, 358 Ill. App. 3d 512, 528 (2005). It is not the

function of the reviewing court to retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

The trier of fact must "resolve conflicts in the testimony, weigh the evidence, and draw reasonable

inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. "A criminal conviction will not

be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt

of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 17        In Illinois, a person may commit DUI in numerous ways. Some violations of DUI require

the State to prove impairment, whereas others are " 'strict liability' " offenses. *People v. Martin*,

2011 IL 109102, ¶ 26 (quoting *People v. Ziltz*, 98 Ill. 2d 38, 42 (1983)). Defendant was convicted

of DUI under section 11-501(a)(6) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(6)

(West 2018)). "A driver with controlled substances in his body violates section 11-501(a)(6)

simply by driving." *Martin*, 2011 IL 109102, ¶ 26. Accordingly, to sustain a conviction for DUI

under section 11-501(a)(6) of the Code, the State must prove that defendant drove a motor vehicle

while she had a controlled substance in her system. See 625 ILCS 5/11-501(a)(6) (West 2018).

¶ 18        Defendant does not dispute that she drove a motor vehicle. Defendant only challenges the sufficiency of the evidence presented to prove that she had cocaine in her system. To prove this element, the State admitted the results of a urine drug screen which showed defendant's urine tested positive for the presence of cocaine. Defendant argues that the accuracy of the test results is undermined by a lack of evidence regarding the accuracy of the tests performed, the lack of evidence of confirmatory tests, and the failure to offer competent testimony from a person with specialized knowledge.

¶ 19        The results of the chemical testing of a defendant's blood and urine may be admissible as a business record under section 11-501.4 of the Code (*id.* § 11-501.4) where such testing was conducted in the course of emergency medical treatment. The results are admissible where the State establishes that: (1) the chemical tests were ordered in the course of providing emergency medical treatment and not at the request of law enforcement, and (2) the tests were performed at the laboratory routinely used by the hospital. *Id.* § 11-501.4(a)(1), (2). Here, the evidence showed that the urine drug screen performed by the hospital was ordered by an emergency room physician in the course of treatment and was performed at the on-site laboratory that they routinely use. Further, the evidence establishes that officers did not request that the hospital perform the testing. Thus, the urine drug screen results were properly admitted as a business record.

¶ 20        Defendant correctly points out that the mere admissibility of evidence does not mean that such evidence will be sufficient to sustain a conviction. See *Jackson v. Virginia*, 443 U.S. 307, 320 (1979). Defendant attempts to analogize the facts of this case with that of *People v. Hagberg*, 192 Ill. 2d 29 (2000). In *Hagberg*, defendant was charged with unlawful possession of a controlled substance, specifically cocaine. *Id.* at 30. An officer discovered a folded paper with a white powdery substance while searching the backseat of his squad car where defendant had been. *Id.* at

6

31. The officer who field-tested the substance failed to: (1) name the test he used, (2) describe how to perform the test, (3) identify what color the substance became when it tested positive for cocaine, and (4) testify that the substance field-tested positive for cocaine. *Id.* at 34. Our supreme court ruled that, while field test results may be sufficient to sustain a conviction in some cases, the evidence in that case was insufficient to convict. *Id.* at 33-34.

¶ 21 Here, the chemical test of defendant's urine was ordered by a physician and tested in the hospital laboratory. Unlike field tests performed by police officers for the purposes of prosecution, medical records are inherently reliable "because they are generated by those who have no reason to prevaricate and must rely on their accuracy." *Troyan v. Reyes*, 367 Ill. App. 3d 729, 734 (2006). "The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Secretary of the Department of Health & Human Services*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

¶ 22 Defendant further challenges the reliability of the test results where a footnote on the laboratory report indicated that the screen assay had not been confirmed and that unconfirmed results should not be used for nonmedical purposes. However, the exhibit contained within the record specifically notes that the analysis of the cocaine screen had been verified through repeat analysis. Where the laboratory report specifically noted that the analysis of the cocaine screen had been verified and medical professionals relied on these results to treat defendant, we cannot say that no reasonable trier of fact could have found these test results reliable.

¶ 23 Finally, defendant argues that our holding in *People v. Petty*, 2020 IL App (3d) 180011, ¶ 21, requires competent testimony from a person with specialized knowledge to prove beyond a reasonable doubt that defendant had cocaine in her system. Defendant argues that such testimony

was lacking in this case where Torres had little knowledge outside his own participation in the process. However, *Petty* is distinguishable from the instant case. In *Petty*, the State alleged that defendant had consumed methamphetamine and provided evidence of a positive test for amphetamine. *Id.* ¶¶ 6, 9. The accuracy of the test results was not at issue in *Petty*. At issue was whether the consumption of methamphetamine could be reasonably inferred from the presence of amphetamine in defendant's system. *Id.* ¶ 21. We found that, absent competent testimony from a person with specialized knowledge, such an inference would be nothing more than "random speculation regarding the metabolization of methamphetamine in favor of the State." *Id.*

¶ 24        Here, the State alleged that defendant had a "controlled substance listed in the *** Act" in her system at the time she drove a motor vehicle. The State presented medical records indicating that defendant had cocaine in her system. Cocaine is listed as a controlled substance in the Act. 720 ILCS 570/206(b)(4) (West 2018). Nothing about the evidence presented here requires a higher level of chemical knowledge than the average person possesses.

¶ 25        The evidence at trial established that on August 3, 2018, officers responded to a motor vehicle crash at approximately 3:30 a.m. Defendant was transported to the hospital for medical treatment at approximately 4:19 a.m. Defendant provided a urine sample to medical personnel at 5:15 a.m., which was sent to the hospital laboratory for analysis. The results of defendant's urine drug screen indicated that she had cocaine in her system and was verified by repeat analysis. Viewing this evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the test results reliable and the evidence sufficient to prove defendant guilty beyond a reasonable doubt. See *Collins*, 106 Ill. 2d at 261.

¶ 26                                B. Speedy Trial Violation

8

¶ 27 Next, defendant argues her speedy trial rights were violated when the State filed a new charge of DUI more than one year after she was initially charged for DUI. A defendant is guaranteed the right to a speedy trial both constitutionally and statutorily. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5 (West 2018). Here, defendant argues a violation of her statutory right to a speedy trial. The speedy trial statute provides, in relevant part, that every defendant not in custody in this state for an alleged offense shall be tried within 160 days from the date he or she files a written demand for trial unless delay is occasioned by defendant. 725 ILCS 5/103-5(b) (West 2018). "If the delay is occasioned by the defendant, the applicable statutory period is tolled." *People v. Rogers*, 2021 IL 126163, ¶ 29. Calculation of the speedy trial period becomes more complicated where, as here, multiple related charges are involved. *People v. Williams*, 204 Ill. 2d 191, 198 (2003). Where additional related charges are added, we must determine whether the compulsory joinder rule applies. *Rogers*, 2021 IL 126163, ¶ 30.

¶ 28 The compulsory joinder rule requires the State to join multiple charges against a defendant into a single prosecution if the charges are: (1) known to the prosecutor at the commencement of the prosecution, (2) within the jurisdiction of the same court, and (3) based upon the same act. *People v. Kazenko*, 2012 IL App (3d) 110529, ¶ 12. Where the original and subsequent charges are subject to compulsory joinder, the multiple charges are subject to the same speedy trial period. *People v. Hunter*, 2013 IL 114100, ¶ 10.

> "[W]hen the compulsory-joinder rule applies, a delay that occurs on the original charge (or charges) and that is attributable to defendant will not toll the speedy-trial period as to a subsequent charge (or charges), if the delay occurred before the

9

subsequent charge was filed because the subsequent charge was not before the court when the delay occurred." *Kazenko*, 2012 IL App (3d) 110529, ¶ 13.

¶ 29    The appellate districts disagree on whether compulsory joinder applies to charges brought by a uniform citation and complaint form. See *People v. Thomas*, 2014 IL App (2d) 130660, ¶ 30; *Kazenko*, 2012 IL App (3d) 110529, ¶ 14. Our Supreme Court recently addressed this conflicting authority in *Rogers*, finding that for all trial courts that sit within the Third District, our decision in *Kazenko* controls. *Rogers*, 2021 IL 126163, ¶ 32. The instant case originates from Will County which sits within the Third District. Accordingly, we find that the compulsory joinder rule "does not apply to offenses that are charged by a uniform citation and complaint form provided for traffic offenses because the compulsory-joinder rule does not apply to offenses charged in that manner." *Kazenko*, 2012 IL App (3d) 110529, ¶ 14. Here, the original charge was brought by a uniform traffic citation. Thus, compulsory joinder does not apply.

¶ 30    Defendant argues that *Rogers* did not resolve the conflicting appellate case law regarding this issue and asks us to depart from our prior ruling in *Kazenko* and find that compulsory joinder applies in defendant's case. However, even if the charges were subject to the same speedy trial period, no violation occurred. Defendant filed her written demand for trial on September 26, 2019, starting the 160-day clock. See 725 ILCS 5/103-5(b) (West 2018). The added charges were filed shortly thereafter, on November 5, 2019. The trial was held on January 10, 2020. Only 106 days had lapsed between defendant's written demand for trial and the time her trial was held, which is well within the 160-day period. Accordingly, no speedy trial violation occurred.

¶ 31    Defendant asserts that we should find that the speedy trial period for the new DUI charge began on the date the original DUI charge was filed, 459 days before its filing on November 5, 2019. Defendant acknowledges that ordinarily the speedy trial clock begins, by operation of

statute, when defendant is either in custody or files a formal demand for speedy trial. See *Hunter*, 2013 IL 114100, ¶ 27 (defendant "filed a written demand for trial, which started the 160-day speedy-trial period"). Defendant contends that it would be unfair to consider the date she asserted her right to speedy trial against her where she did not know of the State's planned charges and could not make an informed decision to assert that right. In support of this, defendant explains that courts have found, where the related constitutional right to speedy trial was concerned, that when the defendant did not know about the charges against him, his assertion of that right is irrelevant. See *People v. Chambers*, 258 Ill. App. 3d 73, 80 (1994).

¶ 32        We reject this contention. The defendant in *Chambers* had argued a violation of his constitutional right to a speedy trial while defendant, here, has argued a violation of her statutory right to a speedy trial. *Id.* at 78, 80. While the constitutional and statutory rights address comparable concerns, "the rights established by each of them are not necessarily coextensive." *People v. Kliner*, 185 Ill. 2d 81, 114 (1998). Unlike the constitutional right to a speedy trial, the statutory right imposes a duty on defendants who are not in custody to demand speedy trial in writing. 725 ILCS 5/103-5(b) (West 2018). The speedy trial period does not begin until such a demand is made. *Id.*; *Hunter*, 2013 IL 114100, ¶ 27. Also, the statutory right may be suspended or tolled where defendant fails to take affirmative action to prevent the delays. 725 ILCS 5/103-5(f) (West 2018); *People v. Phipps*, 238 Ill. 2d 54, 70 (2010). Insofar as defendant is attempting to claim a violation of her constitutional right to a speedy trial, it is forfeited where she has not argued a constitutional violation, discussed the applicable law, or how it applies to her case. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 33                                    III. CONCLUSION

¶ 34        The judgment of the circuit court of Will County is affirmed.

¶ 35        Affirmed.