**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210123-U

Order filed September 6, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0123 Circuit No. 18-DT-322 |
| DARRELL R. MORROW, | ) ) ) | Honorable Carol M. Pentuic, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Justice McDade partially concurred and partially dissented.

**ORDER**

¶ 1     *Held*: (1) The circuit court's failure to comply with Illinois Supreme Court Rule 431(b) is reversible error, as the evidence is closely balanced. (2) The evidence was sufficient to support defendant's conviction for driving while under the influence of alcohol.

¶ 2     Defendant, Darrell R. Morrow, appeals his conviction for driving while under the influence of alcohol (DUI). Defendant argues, *inter alia*, that the Rock Island County circuit court erred by failing to properly question jurors in accordance with Illinois Supreme Court Rule

431(b) (eff. July 1, 2012) and the State failed to prove him guilty beyond a reasonable doubt. We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with DUI (625 ILCS 5/11-501(a)(2) (West 2018)). The cause proceeded to a jury trial on October 2, 2020. During jury selection, the court asked 11 members of the eventual jury whether they understood and accepted that (1) defendant is presumed innocent of the charge against him, (2) the State must prove defendant's guilt beyond a reasonable doubt, and (3) defendant is not required to offer any evidence on his own behalf. The court failed to ask these jurors if they understood and accepted that if defendant does not testify it cannot be held against him. The court asked one juror and the alternate juror whether they understood and accepted that (1) defendant is presumed innocent of the charge against him, (2) the State must prove defendant's guilt beyond a reasonable doubt, and (3) defendant is not required to "say or testify against himself." The court failed to ask whether they understood and accepted that defendant is not required to offer any evidence on his own behalf.

¶ 5        At trial, Rock Island Deputy Anthony Johnson testified that on August 18, 2018, at approximately 1:20 a.m., he passed a vehicle driven by defendant. He noticed defendant turned off the headlights, and the vehicle drifted toward the shoulder. Johnson stopped the vehicle. Defendant told Johnson that he turned his headlights off because he was "trying to signal a female he believed he knew in a red Lexus." Johnson did not see a red Lexus nearby. Johnson observed that defendant "smelled of metabolized alcohol," had glassy, watery eyes, and "slurred his speech a little bit." Defendant told Johnson that he had consumed a "couple of drinks." Given these observations, Johnson requested that defendant perform field sobriety tests. Initially, defendant indicated that he had no medical conditions that would prevent him from performing

2

the tests. Johnson indicated that he performed the horizontal gaze nystagmus (HGN) test according to his training and described only two of the possible HGN cues. Johnson did not explain how many total cues are in the HGN test, how many cues show impairment, what cues he observed in defendant, or what information he learned from defendant's showing of six cues.

¶ 6    Next, Johnson administered the walk-and-turn test. Johnson explained that the walk-and-turn test is a "divided attention test. It tests balance, your ability to follow instructions ***." Johnson generally explained that he demonstrates the test and instructs an individual to take nine steps. For the jury, Johnson demonstrated how to complete the walking portion of the test. Johnson did not explain the instructions for the test during or after the demonstration. Johnson did not explain what the cues of impairment were, how many cues are necessary for a finding of impairment, or what additional instructions he gave defendant. On the night in question, Johnson "had to stop [defendant] several times because when [Johnson] was doing the initial part of putting [defendant] in the starting position [defendant] began to walk on his own" twice. Johnson observed three cues of impairment. Again, Johnson did not explain which cues defendant displayed, how many cues show impairment, or what information he gathered from the cues.

¶ 7    Johnson began instructing defendant on the one-leg stand test. At this point, defendant indicated that he had a medical condition with his legs that would affect his ability to perform the test. Based on Johnson's observations and defendant's performance on the two field sobriety tests, Johnson believed that defendant was under the influence of alcohol. Johnson placed defendant under arrest for DUI.

¶ 8    Johnson testified that, following defendant's arrest, defendant made comments to Johnson that included "several racial epithets, the n-word several times, made reference to [Johnson] performing [sexual] acts on other males, and calling [Johnson] an Uncle Tom a couple

3

of times too. Said [Johnson] abuse[d] [his] own people." Defendant was "very irate" and "getting up against the divider screaming at [Johnson]." Defendant refused to submit to the breathalyzer test.

¶ 9        Johnson's squad car was not equipped with a camera, and Johnson did not have a body camera. The State introduced into evidence body camera footage captured by another officer on the scene.[1] The officer arrived at the scene after Johnson finished conducting the HGN test. While Johnson conducted the walk-and-turn test, the officer with the body camera moved to different locations and the audio can only be heard sporadically throughout the video. The video showed Johnson administering parts of the walk-and-turn test to defendant. Johnson spoke to defendant while defendant stood and listened. The conversation cannot be heard at this point in the video. Defendant did not appear to be upset. Johnson demonstrated the starting position for defendant twice. Both times defendant started the walk-and-turn test early. Defendant expressed frustration with Johnson's instructions. Johnson demonstrated the starting position again. Defendant assumed the position. Johnson then told defendant to stand with his right foot in front of his left foot with his hands at his sides and said, "when I tell you to, I want you to walk the following way." At no time prior to this point does the video capture Johnson instructing defendant to stay in the starting position while he demonstrated the test. Johnson walked heel to toe while counting out loud. Johnson instructed defendant to take nine steps and "walk 9 steps back while counting out loud." Johnson did not tell defendant to walk heel to toe. Defendant began walking with a normal stride, with his hands at his sides, and in a straight line. Defendant

_____

[1]Three videos were submitted on appeal. The State failed to explicitly identify which video it entered into evidence at trial. Comments made by the State during Johnson's testimony and in its closing argument referenced a single video. By process of elimination, we determined that the State admitted the second video only, and, thus, we limit our consideration to that video on appeal.

did not walk heel to toe. Defendant walked out of frame in that manner. Next, the video showed defendant walking back similarly.

¶ 10    On cross-examination, Johnson testified that he submitted a supplemental report to correct his misspelling of defendant's name in his initial report. Johnson clarified that defendant did not swerve while driving his vehicle. Johnson did not include the word "drifted" in his initial or supplemental report. Instead, he stated that defendant "pulled to the side as if to park." Johnson also failed to note that (1) he observed defendant's slurred speech and glassy eyes, and (2) defendant made lewd comments and used racial epithets. Johnson stated that defendant did not have difficulty exiting his vehicle or walking. Defendant did not stumble, fall, sway, or lean against a vehicle at any point during the stop. While Johnson did not observe a red Lexus, he agreed there could have been one.

¶ 11    The jury found defendant guilty of DUI. The court sentenced defendant to 12 months of conditional discharge. Defendant appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendant argues that (1) the circuit court failed to strictly comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), by asking prospective jurors three out of the four required propositions, and (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt. Defendant acknowledges that the first issue was forfeited but contends that his claim is reversible under the plain error doctrine because the evidence is closely balanced.

¶ 14    Under the plain error doctrine, we must first determine whether a "plain error" occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). "The word 'plain' *** is synonymous with 'clear' and is the equivalent of 'obvious.' " *Id.* at 565 n.2. If we determine that the circuit court committed a plain error, the second step is to determine whether that error is reversible. *Id.* at

5

565. A plain error is reversible when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* In the present case, defendant argues only that the court committed reversible error under the first prong.

¶ 15    Rule 431(b) requires the court to ask whether each juror

> "understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 16    Rule 431(b) "mandates a specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). The circuit court must ask each potential juror whether he or she "understands and accepts" each of the four principles listed in the rule. Ill. S. Ct. R. 431(b) (eff. July 1, 2012); *People v. Wilmington*, 2013 IL 112938, ¶¶ 30, 32. The court must then allow each prospective juror the opportunity to respond regarding their understanding and acceptance of those principles. *Thompson*, 238 Ill. 2d at 607. In the present case, we accept the State's concession that the court committed plain error by failing to ask each juror whether they understood and accepted all four principles in compliance with Rule 431(b). See *Wilmington*, 2013 IL 112938, ¶¶ 30, 32.

¶ 17    To determine if the evidence is closely balanced, "a reviewing court must undertake a commonsense analysis of all the evidence in context." *People v. Belknap*, 2014 IL 117094, ¶ 50. This "inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *People v. Sebby*, 2017 IL 119445, ¶ 53. The court must take a qualitative approach to the evidence and consider it "within the context of the circumstances of the individual case." *People v. Adams*, 2012 IL 111168, ¶ 22. Evidence can be closely balanced when each party presents credible witnesses or where the credible testimony of a witness is countered by evidence that casts doubt on his or her account. *Sebby*, 2017 IL 119445, ¶ 63.

¶ 18    As charged in this case, section 11-501(a)(2) of the Illinois Vehicle Code states: "A person shall not drive or be in actual physical control of any vehicle within this State while: *** under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2018). "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000).

¶ 19    The State's case predominantly derived from Johnson's testimony about the incident, which included testimony that defendant appeared drunk and displayed cues on two field sobriety tests. However, Johnson's testimony posed substantial issues of credibility and much of the remaining evidence presented contradicted Johnson's testimony. See *Sebby*, 2017 IL 119445, ¶ 63. First, Johnson's testimony was countered by significant evidence that cast doubt on his account. See *id.* Specifically, Johnson failed to note many of his alleged observations in his report, including defendant's slurred speech, glassy eyes, belligerent behavior, and that defendant's vehicle drifted to the side of the road. Yet, Johnson was purportedly able to recall

7

these specific observations over two years after defendant's arrest. Second, the video failed to corroborate Johnson's testimony that defendant admitted to drinking and Johnson's observations of slurred speech. The video evidence also conflicts with Johnson's testimony regarding defendant's demeanor following his arrest. Defendant, at most, appeared to be frustrated with Johnson's instructions. In combination with the negligible evidence of defendant's impairment, and in light of the evidence showing that defendant committed minor traffic infractions, was able to communicate with Johnson, and did not lose his balance, stumble, or need assistance at any time during the investigation, as corroborated by the video, we find that the evidence presented was closely balanced. See *id.* ¶ 53; *Adams*, 2012 IL 111168, ¶ 22.

¶ 20    However, taking the evidence in the light most favorable to the State and giving deference to the credibility determinations, as we must when considering the sufficiency of the evidence, we find the evidence sufficient to convict where defendant (1) exhibited slightly slurred speech and glassy, watery eyes; (2) smelled of an alcoholic beverage; (3) exhibited belligerent behavior; (4) displayed cues of impairment on two field sobriety tests; (5) admitted to drinking; and (6) refused the breathalyzer test. See *Piatkowski*, 225 Ill. 2d at 566 (whether the evidence is closely balanced is a separate question from a sufficiency of the evidence claim, where "[t]he relevant inquiry for reasonable doubt purposes is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Therefore, double jeopardy does not bar defendant's retrial. See *People v. Drake*, 2019 IL 123734, ¶ 20. Because we reverse defendant's conviction, we need not consider defendant's remaining contentions.

¶ 21                                III. CONCLUSION

8

¶ 22    The judgment of the circuit court of Rock Island County is reversed and remanded for further proceedings.

¶ 23    Reversed and remanded.

¶ 24    JUSTICE McDADE, specially concurring in part and dissenting in part:

¶ 25    I agree with the majority's reversal of the matter due to the circuit court's violation of Rule 431(b) and the closely balanced evidence. However, I also conclude that the State failed to present sufficient evidence to sustain defendant's DUI conviction. Therefore, I would reverse defendant's conviction and find that double jeopardy precludes a new trial. See *Drake*, 2019 IL 123734, ¶ 20.

¶ 26    When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). However, " 'we should not make random speculations in favor of the [State].' " *People v. Petty*, 2020 IL App (3d) 180011, ¶ 21 (quoting *People v. Dye*, 2015 IL App (4th) 130799, ¶ 12). When the evidentiary record raises a reasonable doubt of defendant's guilt, the reviewing court must reverse the conviction. *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000).

¶ 27    To find sufficient evidence to sustain defendant's conviction in this case would require wild speculation regarding his impairment. The State submitted no evidence of defendant's impairment by way of field sobriety tests. Specifically, the State failed to present any evidence regarding the relationship between alcohol consumption and an individual's performance on field sobriety tests. Of the two tests that defendant performed, Johnson failed to indicate a

9

complete list of which cues he looked for on each test, what cues he observed defendant display, and what he learned from those observations. The video presented showed Johnson omitting important instructions during the walk-and-turn test and misleading defendant, which likely affected his performance. Given the above analysis, I would conclude that the field sobriety tests provided no evidentiary value.

¶ 28 Moreover, what little evidence the State presented was uncorroborated in any other way. Notably, Johnson failed to include in his report his observations of defendant's slurred speech, glassy eyes, belligerent behavior, and that defendant's vehicle drifted to the side of the road. Further, the video presented did not corroborate defendant's traffic infractions; admission to drinking; smell of alcohol; bloodshot and glassy eyes; belligerent behavior; and refusal of the breathalyzer test. See *People v. Day*, 2016 IL App (3d) 150852, ¶ 37 (while "suspicions of impairment that may have been raised by the defendant's admitted consumption of alcohol and bloodshot and glassy eyes" are probative facts, those facts are insufficient to establish the belief that defendant committed the crime of DUI without being "corroborated in any significant way by any other factors"). Importantly, the video showed that defendant had no trouble walking in a straight line or otherwise balancing during the investigation. I disagree with the majority's determination that the evidence presented came down to a question of credibility. Instead, I would find that the record shows a complete lack of competent evidence of defendant's impairment. To sustain a conviction would require extreme conjecture that alcohol consumption impaired defendant to a degree that would "reduce his ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000); see *Day*, 2016 IL App (3d) 150852, ¶¶ 37-38; see also *Petty*, 2020 IL App (3d) 180011, ¶ 21; *Workman*, 312 Ill. App. 3d at 310.

¶ 29      For the reasons set forth above, I conclude that the State's evidence was insufficient to convict defendant of DUI. I would, therefore, reverse his conviction, precluding retrial. See *Drake*, 2019 IL 123734, ¶ 20.